UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LADARIUS D. MCGHEE,

                      Plaintiff,

v.                                                                                Case No. 25-cv-1334-pp

GETTINGOUT LLC, *et al.*,

                      Defendants.

**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM AND IMPOSING PLAINTIFF'S THIRD STRIKE UNDER 28 U.S.C. §1915(G)**

       On September 3, 2025, plaintiff Ladarius D. McGhee, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint alleging that the defendants violated his constitutional rights. Dkt. No. 1. The same day, the clerk's office sent the plaintiff a letter requiring that within twenty-one days he must either pay the $405 filing fee or file a request for leave to proceed without prepaying that fee (along with a certified copy of his institutional trust account statement for the past six months), and that he must file a signed magistrate judge consent form. Dkt. No. 2. The letter warned the plaintiff that if he did not pay the filing fee or file a motion to proceed without prepaying it, the court could dismiss his case. Id. The clerk's office sent the letter to the plaintiff at Waupun Correctional Institution, where the Department of Corrections' Offender Locator indicates the plaintiff has been housed since February 12, 2025. https://appsdoc.wi.gov/lop/details/detail.

The letter has not been returned to the court as undeliverable, and the court has no reason to believe that the plaintiff did not receive it.

The twenty-one-day deadline (September 24, 2025) has passed, and the court has not received either the filing fee or a motion for leave to proceed without paying it. Nor has the court heard from the plaintiff since he filed this lawsuit nearly two months ago. The plaintiff's failure to comply with the court's orders is grounds for the court to dismiss this lawsuit without prejudice. See Civil Local Rule 41(c) (E.D. Wis.) ("Whenever it appears to the Court that the plaintiff is not diligently prosecuting the action . . . the Court may enter an order of dismissal with or without prejudice."). Further, after screening the complaint as required under 28 U.S.C. §1915A(a), the court has concluded that it does not state a claim. The court will dismiss this case and order the plaintiff to pay the full $405 filing fee over time in the manner explained at the end of this order.

**I.      Screening the Complaint**

    A.      Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A "frivolous" complaint "lack[s] an arguable basis either in law or fact." Felton v. City of Chicago, 827 F.3d 632, 635 (7th Cir. 2016) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). A complaint is factually frivolous if its allegations are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." Id. (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). A claim is legally frivolous if it is "based on an indisputably meritless legal theory." Id. (quoting Neitzke, 490 U.S. at 327–28). A "malicious" complaint is one brought for purposes of harassment. Heard v. Blagojevich, 216 F. App'x 568, 570 (7th Cir. 2007) (citing Lindell v. McCallum, 352 F.3d 1107, 1109 (7th Cir. 2003)).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Gettingout LLC and Westlaw LLC. Dkt. No. 1 at 1. The plaintiff sues these defendants in their official capacities. Id. The complaint alleges that Westlaw, the State of Minnesota and "Thompson Reuters" have violated his rights under the Eighth Amendment. Id. He cites two of his previous cases—McGhee v. Reynolds, Case No. 23-cv-705-jdp (W.D. Wis.) and McGhee v. Garland, Case No. 24-cv-381—that he says "are the most viewed cases in Westlaw LLC history." Id. He claims that "Thompson Reuters" is owned by the State of Minnesota, which "has a[n] [F]BI office, and as well a depar[t]ment of Justice" where there are "experencied attorney's [*sic*]." Id. He claims that Westlaw "is controlled by egotistic policitans [*sic*], [F]BI, DEA, CIA, and every other governmental employee." Id. He claims that the defendants "knowingly targeted Lexus nexus [*sic*], due to publishing of entire case, as a resulst [*sic*] to prevent inmates from obtaining cases." Id.

The plaintiff asserts that Westlaw "has/can manipulate names, in cases" and has chosen "to target a spec[i]fic area, which shows were Department of Justice news of letters [*sic*]." Id. He asserts that the defendants "are not allowed to use Bia's [*sic*] tactics in order to Benefit one population." Id. at 1–2. He alleges that Gettingout LLC "know that Westlaw LLC, had engaged in unethical

behavior Before." Id. at 2. He says that Gettingout "has a tablet Regeister [*sic*] to plaintiff" and that the company "has a software, that shows The ongoing intentionally targeting of plaintiff tablet." Id.

The plaintiff seeks $20 million in damages, and he asks that Gettingout LLC and Westlaw "be Removed from tablet vendor, due to direct caused of a violent assaulsat [*sic*] and intentionally targeting plaintiff tablet to prevent plaintiff Litigating." Id. He states that he is demanding a trial within sixty days but also "is willing to settle case." Id. On an additional page addressed to "Whom may concern," the plaintiff says that he will "agree to dismiss this case" if "a check in the ammount [*sic*], of $25,000,000 Be Sent via wire to attorney Hailey Scansy [*sic*]." Id. at 4.

C.   Analysis

The complaint is confusing and difficult to follow. It names as defendants Gettingout LLC, which is a private company that "provides simple and reliable communication between inmates, friends and family." See About, GETTINGOUT, https://www.gettingout.com/about/. The court infers from the allegations in the complaint that Gettingout provides to incarcerated persons tablets that they may use to access websites, including Westlaw. Westlaw LLC, the other defendant named in the complaint, is a private company owned by Thomson (not "Thompson") Reuters. See Legal Research Tools, Westlaw, THOMSON REUTERS, https://legal.thomsonreuters.com/en/westlaw. The plaintiff says that the State of Minnesota owns Thomson Reuters, but that is not correct. The only obvious connection Thomson Reuters has to Minnesota is West Publishing,

5

which was founded in Minnesota and which Thomson Reuters acquired in the 1990s. See, https://www.thomsonreuters.com/en/about-us/company-history.

The plaintiff has not articulated the legal basis for his complaint. But he states that the defendants violated his rights under the Eighth Amendment, and he seeks monetary damages. The court infers that he wants to proceed under 42 U.S.C. §1983, which allows a plaintiff to seek damages for (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). But neither Gettingout LLC nor Westlaw LLC is a proper defendant under §1983 because they are private actors and do not act "under color of state law." The fact that Gettingout has sold tablets or other products to state prisons, such as Waupun, does not make it a state actor. See Steading v. Thompson, 941 F.2d 498, 499 (7th Cir. 1991) (citing Rendell–Baker v. Kohn, 457 U.S. 830, 840–41 (1982)) ("A private firm does not become a state actor by selling its products to the government."). Nor is Westlaw (or Thomson Reuters) a state actor merely because incarcerated persons have access to its database on their state-issued tablets.

Even if Gettingout and Westlaw were proper defendants, the plaintiff's allegations do not assert a violation of his rights under the Eighth Amendment. An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. To satisfy the

6

Case 2:25-cv-01334-PP    Filed 10/28/25    Page 6 of 12    Document 3

subjective component of an Eighth Amendment claim, the plaintiff must demonstrate that the defendants were deliberately indifferent to that risk, that is, that they were aware of the risk but disregarded it. Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The complaint does not satisfy either of these elements. The court reads the complaint to allege that the defendants manipulated names or other information in two of the plaintiff's past cases to target him for an unstated purpose. The plaintiff alleges that Gettingout and Westlaw caused a violent assault (presumably of the plaintiff, although he does not say), but he does not explain how having access to Westlaw on Gettingout tablets caused this assault. The plaintiff asked the court in the Western District of Wisconsin to seal his case (Case No. 23-cv-705), but that court denied his request to do so. See McGhee v. Reynolds, Case No. 23-cv-705, Dkt. Nos. 41, 42. The other case that the plaintiff mentions—Case No. 24-cv-381—is a sealed case in the Western District, and this court cannot access it. The court also searched Westlaw for documents from these two cases. The court was able to find Chief Judge Peterson's decision dismissing without prejudice Case No. 23-cv-705. McGhee v. Reynolds, Case No. 23-cv-705, 2024 WL 3756314 (W.D. Wis. Aug. 12, 2024). The court was not able to find any documents from Case No. 24-cv-381.

Perhaps the plaintiff is asserting that by publishing decisions from his past cases (or at least from Case No. 23-cv-705) on its website, Westlaw created or ignored a risk that he would be assaulted, and that Gettingout exacerbated that risk by giving the tablets to other incarcerated persons, who could then

use the tablets to learn about the plaintiff's past cases. But even this generous reading of the complaint is far too speculative to state a claim. See Hanks v. Hubbard, Case No. 21-2504, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022) (citing Twombly, 550 U.S. at 554–56). Merely publishing case information on its website or legal search engine did not make Westlaw aware of a risk (much less a *substantial* risk) to the plaintiff's safety, and the fact that Gettingout provides tablets to incarcerated persons at Waupun does not make it constitutionally liable for any harm that befalls someone who uses one of those tablets.

The plaintiff also alleges that Gettingout and Westlaw targeted him or his tablet to prevent him from litigating his lawsuits. Allegations that state officials prevented an incarcerated person from accessing the court may state a claim, although not under the Eighth Amendment. See Bounds v. Smith, 430 U.S. 817, 821–22 (1977); Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). But this claim requires the plaintiff to allege a detriment and to explain "the underlying cause of action and its lost remedy." Christopher v. Harbury, 536 U.S. 403, 416 (2002). The plaintiff does not explain how allegedly altering case names or other details prevented him from litigating his cases. He only generally says that the defendants targeted his tablet to prevent him from litigating. He does not say whether he *was* prevented from litigating his cases or what harm he suffered as a result. The plaintiff's multiple past and pending cases in this court and in the Western District of Wisconsin suggest that no one has slowed or prevented his litigation.

Because the complaint does not name a proper defendant and does not state a claim for relief even if it had named a proper defendant, the court will dismiss the complaint. District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but the court retains "broad discretion to deny leave to amend the pleadings where the amendment would be futile." Esco v. City of Chicago, 107 F.4th 673, 683 (7th Cir. 2024) (citing Russell v. Zimmer, Inc., 82 F.4th 564, 572 (7th Cir. 2023)). The court finds that additional factual allegations would not save the plaintiff's complaint from dismissal, so the court will not allow him an opportunity to amend his complaint.

This is the third time a court has dismissed one of the plaintiff's cases for failure to state a claim.[1] See 28 U.S.C. §1915(g). This third "strike" will take effect when the court enters judgment in this case. Coleman v. Tollefson, 575 U.S. 532, 538–40 (2015).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g). The court advises the plaintiff that once it enters the judgment in this case, the plaintiff is barred from proceeding without prepaying the full filing fee in any civil lawsuit or appeal he may file while he is a

---

[1] See McGhee v. Garland, et al., Case No. 24-cv-435-jps (dismissed Nov. 14, 2024); McGhee v. Konkel, et al., Case No. 25-cv-1292-pp (dismissed Oct. 20, 2025).

"prisoner" within the meaning of §1915(h) unless he is in imminent danger of serious physical injury. If the plaintiff files any new civil lawsuit without paying the entire $405 civil filing fee, the complaint in that new lawsuit must contain allegations sufficient to show that, at the time he files the complaint, he is in imminent danger of serious physical injury. If the new complaint does not sufficiently allege imminent danger, the court will dismiss it without prejudice. The plaintiff then will have an opportunity to file a motion to reopen the case—along with the entire civil filing fee—within twenty-eight days.

## II. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred his third "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the full **$405** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is incarcerated, and will email a copy to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 28th day of October, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**